## CIRCUIT COURT OF AUGUSTA COUNTY

Monique Tanco

v.

KLLM Transport
Services, L.L.C., *et al.*

February 2, 2015

Case No. CL13002322-00

BY JUDGE VICTOR V. LUDWIG

This matter comes before the Court on a demurrer filed by plaintiff Monique Tanco in response to the second amended counterclaim filed by defendants KLLM Transport Services (KLLM) and Geronimo Manning (collectively, the Defendants). Having reviewed the documents and pleadings submitted in this matter and having heard oral arguments on November 25, 2014, the Court overrules Tanco's demurrer. In addition, the Court heard a Motion To Consolidate this case with Marie Manso *et al.* v. KLLM Transport Services, L.L.C., *et al.*, CL14001083. The Court decided that issue at the hearing and ordered that the cases should be consolidated. However, no order to that effect has been entered.

### *Summary of Facts and Inferences from the Complaint*

For the purposes of this motion, the Court accepts as true the material facts that Defendants have pleaded as well as facts that are fairly implied or inferred from their allegations. *See, e.g., Fox v. Custis,* 236 Va. 69, 71 (1988).

On the night of April 4, 2013, Manning was driving northbound on I-81 in a tractor-trailer owned by KLLM and leased to Manning. (Am. Compl. ¶ 3.) Although obeying the speed limit and other traffic regulations, (Am. Compl. ¶ 4), Manning collided with Tanco's automobile. (Am. Compl. ¶ 7.) Prior to the collision, Daniel Manso, who was driving Tanco's car, lost

control of the vehicle and "stopped sideways" in the left-hand lane of I-81 with his headlights off. (Am. Compl. ¶ 5.) As Manning approached Tanco's' vehicle, another vehicle in the right-hand lane slowed as it prepared to exit I-81; as a result, Manning crossed into the left-hand lane. (Am. Compl. ¶ 6.) While doing so, Manning glanced at a wrecked vehicle in the median. (Am. Compl. ¶ 7.) Manning did not see Tanco's vehicle until it was too late. (Am. Compl. ¶ 7.) The accident caused Manning permanent injury, emotional distress, and other injuries. (Am. Compl. ¶ 9.)

The Defendants bring the second amended counterclaim pursuant to New York law. *See* N.Y. Veh. & Traf. Law § 388 (McKinney 2014) (the Statute). Tanco, his wife, and Manso were residents of New York at the time of the accident, and Tanco purchased the car while he and his wife lived in New York. (Am. Compl. ¶¶ 13–15.) The vehicle was registered in West Virginia because, as a reconstructed vehicle, it could not be registered in New York. (Am. Compl. ¶ 17.) Tanco gave Manso permission to drive his vehicle to an auto auction in Virginia and then to an inspection in West Virginia before returning to New York. (Am. Compl. ¶ 22.) The accident occurred while Manso was returning to New York. (Am. Compl. ¶ 24.)

### *Basis for the Demurrer*

Tanco demurs on a single point, the accident occurred in Virginia and the Defendants are seeking to apply New York law. (Pl.'s Dem. ¶ 1.) Tanco argues that the law of the Commonwealth applies, and, because Virginia law does not provide strict vicarious liability for negligence which is the proximate cause of automobile accidents, the amended complaint fails to state a proper claim. (Pl.'s Dem. ¶¶ 2–3.)

### *Analysis*

A demurrer tests the legal sufficiency of a claim and asks whether the facts alleged, taken as true, are sufficient to support a cause of action. *See Glazebrook v. Board of Supervisors,* 266 Va. 550, 554 (2003). As noted above, "[a] demurrer admits the truth of all properly pleaded material facts," and "[a]ll reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Kellerman v. McDonough,* 278 Va. 478, 484 (2009). "However, a demurrer does not admit the correctness of the pleader's conclusions of law," *Dodge v. Randolph-Macon Woman's College,* 276 Va. 1, 5 (2008), except that "[a]n allegation of negligence or contributory negligence is sufficient without specifying the particulars of the negligence." Sup. Ct. R. 3:18(b) (2011). An inadequacy concerning pleading negligence can be addressed by a demand for a bill of particulars pursuant to Rule 3:7.

The New York Statute provides in relevant part:

> Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.

*Id.* § 388(1).

The Defendants allege that Tanco granted Manso permission to drive his vehicle, that Manso acted negligently in doing so, and that Manso's negligence harmed the Defendants. (Am. Compl. ¶¶ 28–30.) If the Statute applies to this case, the Defendants have sufficiently pleaded a cause of action. Virginia law, however, does not provide vicarious strict liability in such circumstances. *See Dreher v. Budget Rent-A-Car Sys., Inc.*, 272 Va. 390, 395 (2006) ("[A]n automobile owner is not vicariously liable for negligence of another person simply because the negligent party was operating the vehicle with the owner's permission."). If the law of the Commonwealth governs, the Defendants' counterclaim is insufficient, and Tanco's demurrer should be sustained. Virginia's choice-of-law rules govern this issue. *See id.* (noting that Virginia choice-of-law rules apply when a case is filed in a Virginia court).

Resolution of this issue depends on the characterization of the Statute. If the Statute sounds in tort, Virginia tort law would apply under the doctrine of *lex loci delicti*, meaning "the law of the place of the wrong governs all matters related to the basis of the right of action." *Id.* (citing *Jones v. R. S. Jones & Assocs.*, 246 Va. 3 (1993)). If the Statute sounds in contract, however, then New York law (i.e., the Statute) applies because "the law of the place where the contract was formed applies when interpreting the contract and determining its nature and validity." *Id.*

The Supreme Court of Virginia addressed this issue, on different facts, in *Dreher*. The facts of that case revealed that Leonard Saunderson rented a car from Budget Rent-A-Car System (Budget) "pursuant to a written contractual agreement entered into in New York." *Id.* at 393. While driving the vehicle in the Commonwealth, Saunderson stuck a vehicle driven by Sherman Dreher and his wife. *Id.* Dreher sued Budget in Virginia under the Statute. The Court characterized the issue before it as follows:

> We must decide whether a New York statute, which imposes vicarious liability on the owner of a vehicle for death or injuries caused by the negligence of a person operating the vehicle with the owner's permission, is a matter of tort, meaning Virginia's substantive law applies, or a matter of contract, meaning the New York statute applies.

*Id.*

In deciding the issue, the Supreme Court of Virginia disagreed with the Fourth Circuit, which had previously concluded that the Statute was a tort provision. In *Kline v. Wheels by Kinney, Inc.*, 464 F.2d 184 (4th Cir. 1972):

> Miss McCorkle, a citizen and resident of New York rented an automobile from Kinney for a period of one month. The lease agreement was executed and the vehicle which was licensed and registered in New York was delivered to McCorkle in that state. Miss McCorkle drove from New York to Nags Head, North Carolina, on a vacation trip, and, on August 25, 1968, while driving the vehicle in the vicinity of Nags Head, she struck the plaintiff, Kline, inflicting serious and permanent injuries.

*Id.* at 185. Kline sought to hold Kinney liable on the basis of the Statute, but the Fourth Circuit concluded that, because the Statute did not contain any language "specifically directed toward persons renting or leasing motor vehicles," it could not "properly be considered a part of any leasing agreement." In making those observations, it was distinguishing the case from a Connecticut case on which the District Court had relied. With that premise, the Fourth Circuit held:

> By its terms it is designed to impose liability upon the owner of any vehicle for injuries resulting from the negligent conduct of a permissive user. It therefore becomes an integral part of the New York law of torts independent of any contractural [*sic*] relationship.

*Id.* at 187.

Rejecting that analysis, the Supreme Court of Virginia determined that the Statute was a contract statute because it "resembles a contractual provision imposed by statute designed to regulate the relationship between vehicle owner and an individual operating the vehicle with permission." *Dreher,* 272 Va. at 397. The Court concluded that the Statute imposes a contractual duty on all vehicle owners to assume liability when a permitted driver uses the owner's vehicle negligently and harms another person. *Id.* at 400 (citations omitted). The Statute protects "innocent victims of automobile accidents by assuring that there will be a financially responsible party who is available to answer in damages." *Id.* at 400. Indeed, New York courts have interpreted this provision in a similar fashion, determining that the statute extends extra-territorially. *Id.* (citing *Farber v. Smolack,* 20 N.Y.2d 198 (N.Y. 1967)). Finally, the Supreme Court of Virginia determined that applying the Statute in *Dreher* would not frustrate Virginia public policy. *Id.* at 400–01.

Tanco attempts to distinguish *Dreher* on two grounds, both of which fail. First, Tanco argues that *Dreher* is distinguishable because that case involved a written contractual agreement while this case does not. Given the fact that language of the Statute is triggered by the operator's using the owner's vehicle "with the permission, express or implied, of such owner," that is a difficult argument successfully to maintain. There will be many instances in which one person may use another's vehicle with implied permission that will not involve a written agreement. Indeed, although I concede that it would not be impossible, it is unlikely that implied permission would be grounded on a written agreement.

In addition, Tanco contends that Defendant failed to plead that a contract of any kind existed between her and Manso so New York contract law cannot apply because there is no contract. But the argument mischaracterizes the *Dreher* decision. Again, the Statute, by its language, does not require a contract; it only requires permission, so the question is the relationship created between the owner and the driver by the former's granting permission. The *Dreher* court determined that the Statute governed the relationship between a car owner and a permitted driver. *Id.* at 328. However, the Court clearly stated that "we believe the New York statute resembles a contractual provision imposed by statute designed to regulate the relationship between a vehicle owner and an individual operating the vehicle with permission." *Id.* at 398. Reaffirming that proposition, the Court further opined that "[t]he provisions of N.Y. § 388 . . . impose 'a contractual duty upon the [owner of the vehicle]. . .'." *Id.* at 400. Hence, no other contract is necessary, written or otherwise.

Second, Tanco contends that *Dreher* does not apply because the vehicle in this case is registered in West Virginia. Having first acknowledged that the Supreme Court of Virginia noted in *Dreher* that the "pleadings do not disclose whether the rental vehicle was registered in New York," *id.* at 93, Tanco argues that the "fact that the vehicle [in this case] was not registered in New York is a major distinguishing factor from the court's ruling in *Dreher.*" Brief in Support of Demurrer, at 4. That is something of a non-sequitur. The argument would be that, in *Dreher,* there was no evidence that the vehicle was registered in New York (but the Statute nonetheless applied), so the fact that the vehicle in the case at bar was not registered in New York sufficiently distinguishes this case from *Dreher* so that the Statute should not apply.

To be sure, this is one of the issues into which the Court introduced an element of ambiguity. "Like the court in *Klippel v. U-Haul Co. of N.E. Mich.,* 759 F.2d 1176, 1183 (4th Cir. 1985), we believe that, by enacting N.Y. Law § 388, the 'New York legislature intended to regulate the relationships between motor vehicle owners and their . . . permittees. Clearly[,] New York's legislature has the power to prescribe the terms and coverages of the liability insurance required of the owners of all motor vehicles *registered*

*in New York'."* (Emphasis added.) Although the Court approved language that appears to limit the application of the statute to vehicles registered in New York, the Court specifically expressed "no opinion whether the result in [*Dreher*] would be different if in fact the rental vehicle was not registered in New York." *Id.* at 393, n. 2. That comment certainly could imply that the Court assumed that the vehicle was registered in New York, although that would have been mere speculation because "[t]he pleadings do not disclose whether the rental vehicle was registered in New York." It could signal, too, that the Court might rule differently if there were evidence that the vehicle were not registered in New York, but that seems unlikely because it would not conform to the Court's basic analysis of the issue.

One thing is clear, the Statute applies to vehicles that are "used or operated" in New York, and nothing in the language mandates that the vehicle be registered in New York. In *Fried v. Seipple,* 80 N.Y.S.2d 32 (N.Y. 1992), the New York Court of Appeals held that the Statute "does not extend to owners of vehicles that have never been registered, used, operated, *or* intended for use" in New York. *Id.* at 40 (emphasis added, the implication being that any one of the criteria would suffice for the application of the Statute). And in *King v. Car Rentals, Inc.,* 813 N.Y.S.2d 448 (N.Y. 2006), the court interpreted *Fried* to find that "prior use of a vehicle to any degree" in New York would trigger the applicability of the Statute. Undoubtedly (and happily), these cases are not binding on this Court, but when read in light of the clear language of the Statute, I find the cases highly persuasive in this case involving a vehicle owned by one New Yorker and driven by another at the request of the owner (made in New York), and travelling through the Commonwealth.

In light of *Dreher,* the Court finds that the Statute is a contract provision. As such, it governs the present dispute. Because the Defendant has pleaded that Tanco (a) purchased her vehicle while living in New York; (b) substantially operated her vehicle in New York; (c) lived in New York throughout the entire period she owned it; and, (d) while in New York, entered into the arrangement by which she permitted Manso to operate the vehicle, this Court finds that the Defendants have properly pleaded their counterclaim under the Statute.

## Conclusion

The Court overrules Tanco's demurrer. I hasten to add that the Court has not fully explored all of the other possible distinctions between this case and *Dreher,* so my decision is limited to the specific facts of this case. Although I suspect it extremely unlikely to happen during the relatively short time I have remaining on the Bench, I do not want this decision to be used as precedent in any other case in this Court, presenting different facts but which might involve the application of the Statute.

I also ask that Mr. Miller or Mr. Tsun prepare an order consolidating this case.